**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**



| | | |
|---|---|---|
| **ARTHUR R. HOLLOWAY JR.,** | § | |
| **TDCJ #02037836,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **SA-20-CV-01226-XR** |
| **v.** | § | |
| | § | |
| **FRANK STENGEL, Individual Capacity,** | § | |
| **Assistant Warden – John B. Connally Unit;** | § | |
| **ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

Before the Court is *pro se* Plaintiff Arthur R. Holloway Jr.'s ("Holloway") 42 U.S.C. § 1983 Amended Civil Rights Complaint and supplements, Holloway's motion for summary judgment and supplements, Defendants' motion for summary judgment, and Holloway's summary judgment response and supplements.[1] (ECF Nos. 17, 69, 75, 82, 86, 87, 90–92, 94). Upon review, the Court orders Defendants' motion for summary judgment **GRANTED** and Holloway's motion for summary judgment **DENIED**. (ECF Nos. 82, 86).

**FACTUAL AND PROCEDURAL BACKGROUND**

Records from the Texas Department of Criminal Justice ("TDCJ") show Holloway was convicted of capital murder in Harris County, Texas in 2015; he was sentenced to life without parole. *See* Texas Department of Criminal Justice Inmate Search (last visited July 18, 2022). While confined, Holloway filed this civil rights action. (ECF No. 1). Ultimately, Holloway filed an

[1] The document referred to by the Court as Holloway's motion for summary judgment was titled "Pro Se Rule 56(f) FRCP Motion for an Order Finding the Defendants Liable for Acting Deliberate [sic] Indifferent to Plaintiff's Serious Medical Needs in Violation of the Eighth Amendment." (ECF No. 82). The Court construes this as a motion for summary judgment.

Amended Complaint in which he sued the following Defendants in their individual capacities: (1) Frank Stengel, a former TDCJ Assistant Warden;[2] (2) Debra Gloor, a TDCJ Senior Practice Manager; (3) Jamecia Rice, a TDCJ Practice Manager; (4) Lorraine Salas, a TDCJ Grievance Investigator; (5) Antonio Mejia, a UTMB Licensed Vocational Nurse ("LVN"); (6) Rita Smith, a former UTMB LVN;[3] (7) Adriana Soliz, a UTMB Certified Medication Aide ("CMA"); (8) Terry Koenning, a UTMB CMA; and (9) Valeria Price, a UTMB CMA. (ECF No. 17).

Following his capital murder conviction, Holloway entered TDCJ December 29, 2015. (ECF No. 86 [Exh. A]). Holloway was assigned to TDCJ's Connally Unit from March 3, 2016 through July 24, 2019; thereafter, he was transferred to the Telford Unit. (ECF Nos. 15, 86 [Exhs. A, A2]). During his TDCJ medical intake, Holloway denied having HIV risk factors and claimed he had a negative HIV test three years before.[4] (ECF No. 86 [Exhs. A, A2, A6]). However, per protocol, he was tested for HIV and the result was positive. (ECF No. 86 [Exhs. A, A5]). Holloway admitted, and the summary judgment evidence submitted by Defendants shows, Holloway was diagnosed with HIV in 2003. (ECF Nos. 15, 86 [Exhs. A, A9]). At the time he entered TDCJ, his records from the Harris County Jail showed he was not taking any medications for his HIV. (ECF No. 86 [Exhs. A, A6]).

2 Defendant Stengel retired from TDCJ in 2020. (ECF No. 24).

3 Defendant Smith "separated" from UTMB. (ECF No. 24).

4 Defendants' motion for summary judgment and the attachments thereto were filed under seal — the attachments consist of an affidavit and medical records that contain Holloway's private medical information. (ECF No. 86 [Exhs. A, A2–36]). However, much of the pertinent medical information necessary to the disposition of this matter was included in the numerous documents filed by Holloway, which were not filed under seal. (ECF Nos. 15, 17, 69, 75, 82, 87, 90–92, 94). Thus, the Court finds it unnecessary to seal this Order of Dismissal to protect Holloway's privacy.

Upon learning of his HIV status, Holloway was referred to the UTMB/CMC Infectious Disease/Virology/HIV specialty clinic ("HIV Clinic") for various tests and screenings. (ECF No. 86 [Exhs. A, A5]). The HIV Clinic determines HIV treatment. (ECF No. 86 [Exh. A]). He was also scheduled for the CMHC Chronic Care Program and was seen for his first chronic care clinic on February 11, 2016; however, for various reasons, including a trip to TDCJ/UTMB hospital in Galveston for evaluation of lung lesion, Holloway did not have his first HIV Clinic appointment until April 12, 2016. (ECF No. 86 [Exhs. A, A6]).

At his initial appointment at the HIV Clinic, Holloway was seen by an HIV specialist. (ECF No. 86 [Exh. A]). Holloway reported he started antiviral medication in 2003, but "self–discontinued" treatment in 2012. (*Id.*). The specialist scheduled Holloway for a battery of tests and prescribed antiretroviral therapy ("ART") with four medications: (1) Lamivudine; (2) Norvir; (3) Prezista; and (4) Viread. (ECF No. 86 [Exh. A]). Holloway agrees these are his prescribed ART medications. (ECF No. 75). The specialist also prescribed antibiotics which Holloway was permitted to "keep on person." (ECF No. 86 [Exhs. A, A5]). ART medications for HIV are not permitted to be prescribed as "keep on person." (*Id.*).

In his Amended Complaint, Holloway contends he was provided the "wrong" ART medications during his entire confinement in the Connally Unit, i.e., he was given medications other than those prescribed. (ECF Nos. 15, 17). He claims his ART medications were "changed consistently without labwork" and without an appointment with the HIV specialist. (*Id.*). More specifically, Holloway claims Defendants Mejia, Smith, Soliz, Koenning, and Price ("the UTMB Medical Defendants") were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights by providing him with incorrect medications. (ECF Nos. 15, 17).

He contends Defendants Stengel, Gloor, Rice, and Salas ("the TDCJ Defendants") violated his civil rights by (1) inadequately investigating his grievances, and (2) inappropriately responding to his numerous grievances by failing to address with the UTMB Medical Defendants his medication claims. (ECF Nos. 15, 17). Holloway claims this shows the TDCJ Defendants were acting in concert with the UTMB Medical Defendants, deceiving him into believing he was receiving the proper medications. (ECF Nos. 15, 17). According to Holloway, Defendants undertook these actions for two reasons: (1) to kill him in order to "silence" him and prevent him from exposing Connally Unit officials' involvement in his son's murder; and (2) to kill him because he was a "snitch," telling authorities that TDCJ "pill nurses" were prostituting themselves with inmates.[5] (ECF Nos. 82, 91).

As a result of the alleged civil rights violations, Holloway contends he suffered: (1) significant weight loss, (2) a reduction in available ART medications; (3) muscle loss; and (4) a decreased life expectancy. (ECF Nos. 17, 90–92). As relief for his claims, Holloway seeks unstated compensatory damages and punitive damages against each Defendant in the amount of $250,000.00. (ECF No. 17).

Holloway filed a motion for summary judgment, arguing he is entitled to judgment on his civil rights claims. (ECF No. 82). Defendants likewise filed a motion for summary judgment, attaching thereto an affidavit from Glenda M. Adams, M.D., M.P.H. and over five hundred pages of Holloway's medical records. (ECF No. 86 [Exhs. A, A2–A36]).[6] Holloway filed supplements

---

[5] Holloway claims a "pill nurse" offered inmates $13,000.00 to kill him. (ECF No. 91).

[6] The medical timeline and records associated with Dr. Adams's affidavit relate only to Holloway's HIV disease and allegations that he received incorrect ART medications. (ECF No. 86 [Exh. A, fn. 16]). Records and information for other medical care was not included. (*Id.*).

to his motion for summary judgment, as well as multiple responses to Defendants' motion for summary judgment. (ECF Nos. 87, 90–92, 94–95).

## ANALYSIS

### *Standard of Review*

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof as to an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid*

*v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations are insufficient to defeat summary judgment if they are nothing more than "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 343 (5th Cir. 2007)).

The Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

***Deliberate Indifference — UTMB Medical Defendants***

Holloway's claims regarding alleged medical mistreatment are based on the Eighth Amendment's prohibition against cruel and unusual punishment. *See* U.S. CONST. amend. VIII. Holloway claims the UTMB Medical Defendants were deliberately indifferent to his serious medical needs when they intentionally, knowingly and with "evil motive" provided him with the "wrong" ART medications, i.e., provided him with medications other than those prescribed without laboratory monitoring or orders from an HIV physician.[7] (ECF Nos. ) Specifically, Holloway contends he was given: (1) Truvada, which was not prescribed; (2) a small white pill with an "I" inscribed on it instead of the prescribed drug Norvir; and (3) the drug Ritonavir in

[7] To the extent that Holloway alleges the same deliberate indifference claims against the TDCJ Defendants, the Court addresses this issue in the next section of the Order.

conjunction with the prescribed drug Tenofovir, which when used together may result in various adverse reactions. (ECF Nos. 91). Holloway claims these actions resulted in significant harm to him, including weight loss, muscle loss, inability to take certain HIV drugs, and reduced life expectancy. (ECF Nos. 17, 90–92).

In response to Holloway's claims, the UTMB Medical Defendants contend the summary judgment evidence shows an absence of deliberate indifference because Holloway was never given "wrong" ART medications. (ECF No. 86). They claim the summary judgment evidence establishes as a matter of law that Holloway was not mistreated but received medical care well within the standard of care and, contrary to his claims, he did not suffer harm while in the Connally Unit. (ECF No. 86).

*1. Applicable Law*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. "Deliberate indifference" to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, an inmate must first demonstrate a serious medical need and then show the defendant acted with deliberate indifference to that need. *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019).[8]

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Id.* (quoting *Gamble*, 429 U.S. at 104). Courts have often described the foregoing as an extremely high or demanding standard. *See id.*; *see also, e.g., Domino v. Tex. Dep't of Criminal. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Neither negligence (medical malpractice), inadvertence, nor an inmate's

[8] The Court assumes without deciding that Holloway demonstrates a serious medical need.

disagreement with his or her treatment is sufficient to state a claim under the Eighth Amendment, i.e., constitutes deliberate indifference. *Gamble*, 429 U.S. at 105–06; *Gibson*, 920 F.3d at 219 (citing *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018)). Rather, the Eighth Amendment proscribes care so unconscionable as to fall below society's minimum standards of decency. *Gibson*, 920 F.3d at 219. An inmate seeking relief under the Eighth Amendment must show state officials or employees acted with malicious intent. *Gibson*, 920 F.3d at 219. This has been described as "wanton infliction of pain" or an act "repugnant to the conscience of mankind." *Gamble*, 429 U.S. at 105–06. Thus, courts have held that to succeed on this type of claim, an inmate must show officials or employees "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard" and did so knowing of and disregarding an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gibson*, 920 F.3d at 220.

2. *Application*

Holloway contends the UTMB Medical Defendants intentionally treated him incorrectly by providing ART medications different from those that were prescribed and did so knowing of the excessive risk to his health given his HIV status. (ECF Nos. 17, 82); *see Farmer*, 511 U.S. at 837. He contends his repeated complaints "warned" the UTMB Medical Defendants of the issue, thereby establishing their intentional mistreatment. (ECF Nos. 17, 82). As a result, he claims he suffered weight and muscle loss, is now resistant to certain ART medications, and has a diminished life expectancy. (ECF Nos. 17, 82). The UTMB Medical Defendants contend the summary judgment evidence establishes as a matter of law that Holloway was never given ART medications different than those prescribed, and that while in the Connally Unit he was provided proper

medications and treatment. (ECF No. 86 [Exh. A]). Moreover, they claim the summary judgment evidence establishes that not only did Holloway suffer no harm as a result of their treatment, his health improved during his confinement in the Connally Unit. (*Id.*).

The summary judgment evidence shows that on April 4, 2016, soon after he was confined in the Connally Unit, Holloway was given blood tests to assess the status of his HIV infection and overall health. (ECF No. 86 [Exh. A8]). The results showed his "CD4 count" was very low, "10 cells/uL," and his viral load was elevated, "54,905 copies/mL," meaning his immune system was compromised and the virus in his blood was elevated.[9] (ECF No. 86 [Exhs. A, A8]). After his lab results were received, Holloway was seen by an HIV specialist physician assistant in the HIV Clinic and prescribed four ART medications: (1) Lamivudine; (2) Norvir; (3) Prezista; and (4) Viread. (ECF No. 86 [Exh. A]). Holloway agrees these are his prescribed ART medications. (ECF Nos. 15, 75). The HIV Disease Management Guideline and HIV specialists promote an eighty percent (80%) or greater compliance for each prescribed ART medication. (ECF No. 86 [Exh. A5]). This is to prevent the development of drug resistance that could limit future drug options. (*Id.*). The summary judgment evidence shows Holloway was well above the eighty percent (80%) goal during the entirety of his confinement at the Connally Unit. (ECF No. 86 [Exhs. A, A2–A4, A6–A10, A12–15, A17, A19–A25, A27, A29–A33, A35–A36]).

In May 2016, Holloway first complained via a Sick Call Request ("SCR") that he was not being provided his prescribed medications. (ECF No. 86 [Exh. A11]). In his motion for summary

---

[9] CD4 is a glycoprotein found of the surface of certain immune system cells. (ECF No. 86 [Exh. A, fn.19]). CD4 counts are a measure of the strength of the immune system. (*Id.*). A healthy CD4 count ranges from approximately 500 to 1,600 cells per cubic millimeter of blood "(cells/mm3 or cells/uL)." (*Id.*). If a person's CD4 count is less than "200 cells/mm3 (or 200 cells/uL)," he is considered to have a stage three HIV infection, which is consistent with an AIDS diagnosis. (*Id.*). HIV viral load tests measure the amount of virus in the blood and are reported as the number of copies in a milliliter of blood ("copies/mL)." (*Id.*).

judgment, Holloway states he was incorrectly given Truvada,[10] which was not prescribed, a small white pill with an "I" on it instead of Norvir, and was given Ritonavir *with* the prescribed Tenofovir.[11] (ECF No. 82). The summary judgment evidence shows Holloway was repeatedly told he was receiving his prescribed medications and advised that they might appear differently depending on the manufacturer. (ECF Nos. 75, 82, 86 [Exh. A26]). Holloway was even shown pictures reflecting the different ways his medications might appear depending on the manufacturer. (ECF No. 86 [Exh. A5]). Holloway refused to accept the explanation and continued to file SCRs and grievances. (ECF Nos. 82, 86 [Exh. A26]).

Based on his initial SCR, Holloway was scheduled for an appointment with a provider three days later, May 23, 2016, but refused to keep it. (ECF No. 86 [Exh. A11]). This was the beginning of a pattern: Holloway filed SCRs and grievances complaining he is receiving the wrong ART medications, he is told he is receiving the correct medications, and although he diligently took his ART medications, he continually refused scheduled lab work and medical appointments. (ECF No. 86 [Exh. A]). The medical records show approximately thirty–five refusals at the Connally Unit. (ECF No. 86 [Exhs. A11, A13, A15–A19, A21, A24–A25, A27, A30–33, A35]). Despite his refusals, Holloway was always rescheduled for lab work and medical appointments while in the Connally Unit. (ECF No. 86 [Exhs. A11, A13, A15–A19, A21, A24–A25, A27, A30–33, A35]). Moreover, given the number of refusals, providers ordered a mental health evaluation of Holloway. (ECF No. 86 [Exh. A22]). These evaluations continued through

[10] Although in this proceeding Holloway contends he was wrongly provided Truvada, his medical records show that in his first SCR he complained that he was *not* receiving Truvada, which he claimed had been prescribed for him. (ECF Nos. 82, 86 [Exh. A33]). Thus, Holloway's claims about what medication he was receiving or supposed to receive are inconsistent. The medical records show Holloway was never prescribed Truvada at the Connally Unit as part of his ART medications. (ECF No. 86 [A13, A15, A17, A19–A21, A23, A27, A30–A36]).

[11] Tenofovir is the brand name for Viread, one of Holloway's prescribed medications. (ECF No. 86 [Exh. A]).

September and October of 2017 until providers were satisfied that mental health issues were not the underlying cause of Holloway's refusals. (*Id.*).

Holloway's pattern of refusals continued after his transfer to the Telford Unit, where he also claimed he was receiving the wrong medications, though the records are to the contrary. (ECF No. 86 [Exhs. A, A36]). Ultimately his ART medications were discontinued by his HIV specialist provider for "non–compliance" after his transfer to the Telford Unit. (ECF No. 86 [Exhs. A, A36]). The discontinuation was ordered because Holloway's continuous refusals left providers unable to monitor him for drug resistance and/or organ damage. (ECF No. 86 [Exh. A]). However, the ART medications were soon reinstated after Holloway agreed to testing. (ECF No. 86 [Exh. A36]). Testing showed that withdrawal of the ART medications caused Holloway's viral load to become detectable, but testing in March 2021 showed an undetectable viral load, a CD4 count of 888 cells/uL, and normal organ function. (ECF No. 86 [Exhs. A, fn. 104, A36]).

Holloway's medical records, which were produced by Defendants in support of the motion for summary judgment, show a pattern of continuous care and treatment during his confinement in the Connally Unit — despite his pattern of refusals. (ECF No. 86 [Exhs. A2–A4, A6–A10, A12–15, A17, A19–A25, A27, A29–A33, A35–A36]). The records also show that throughout his confinement in the Connally Unit, the UTMB Medical Defendants provided Holloway with the very medications he contends in his motion for summary judgment and other documents that he was prescribed. (ECF Nos. 15, 75, 86 [Exhs. A13, A15, A17, A19–21, A23, A27, A31–33, A35]). These documents are dated from August 31, 2016 through July 18, 2019, essentially encompassing a majority of Holloway's stay in the Connally Unit. (ECF No. 86 [Exhs. A13, A15, A17, A19–21,

A23, A27, A31–33, A35]). Moreover, in documents dated September 1, 2017, and July 16, 2019, Holloway seems to admit that at points in time he was receiving his prescribed ART medications. (ECF No. 86 [Exhs. A21, A34).

The medical records also establish that during his confinement at the Connally Unit, Holloway's condition improved. (ECF Nos. 86 [Exh. A]). As described above, Holloway's initial lab results based on testing done soon after his assignment to the Connally Unit showed his CD4 count was very low and his viral load was elevated, indicating a compromised immune system and elevated virus levels. (ECF No. 86 [Exhs. A, A8]). With the treatment provided by the UTMB Medical Defendants and other healthcare providers, Holloway's condition improved. Holloway's CD4 count went from 10 cells/uL in April 2016 to 877 cells/uL in April 2018 (normal range approximately 500 to 1600).[12] His body mass index, despite his claim of weight loss and muscle loss, remained between 22 and 25, which is slightly above the normal range, which is 18.5 to 24.9. (ECF No. 86 [Exh. A, fn. 107]). Thus, contrary to Holloway's claims of injury, his condition during his confinement in the Connally Unit actually improved. (ECF No. 86 [Exh. A5]).

In sum, Holloway's medical records indicate he was afforded extensive medical care while in the Connally Unit, receiving continuous treatment for his HIV and other attendant conditions — except when he refused it, or security concerns precluded it — including the prescribed ART medications. Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The Court finds the records here rebut Holloway's allegations of deliberate indifference by the UTMB Medical Defendants. The medical records and

[12] No results beyond April 2018 are available due to Holloway's refusals for lab work and medical appointments. (ECF No. 86 [Exhs. A24, A27, A30–A33, A35]).

Dr. Adams's affidavit, establish as a matter of law that Holloway neither received the wrong medications nor suffered injury based on provision of care by the UTMB Medical Defendants during his time in the Connally Unit. Thus, the Court finds the UTMB Defendants have shown entitlement to judgment as a matter of law, placing the burden upon Holloway to bring forward evidence to create a genuine issue of material fact. *See Giles*, 245 F.3d at 493.

The Court recognizes it must accept as true any evidence and all justifiable, favorable inferences therefrom produced by Holloway; however, Holloway has not provided the Court with any *evidence*.[13] *See Darden*, 880 F.3d at 727. Although Holloway filed multiple documents asserting his claims and responding to Defendants' motion for summary judgment, the documents contain nothing more than repetitive, conclusory allegations that Defendants intentionally provided him with the "wrong" medications, and he was harmed as a result. (ECF Nos. 15, 17, 69, 75, 82, 87, 90–92, 94). Holloway's allegations are unsubstantiated and there is no evidence establishing a connection between his allegations and any alleged harm — even if he had suffered any — so as to defeat the UTMB Defendants' entitlement to summary judgment based on the evidence they produced.[14] *See Little*, 37 F.3d at 1075.

---

[13] In his motion for summary judgment, Holloway contends there was evidence of Defendants' violations of his civil rights that "could be used to 'contradict' Defendants' version of events," specifically in the form of "camera footage and witness statements," but Defendants failed to disclose the "favorable material evidence" in contravention of this Court's Order. (ECF No. 82). Holloway contends this evidence would have "determined whether Holloway won or lose this lawsuit." [sic] (*Id.*). Indeed, Holloway filed a motion to compel production of this evidence and the Court ordered Defendants to "produce to Holloway … the requested camera footage and witness statements or show cause why the material cannot or should not be produced. (ECF Nos. 80, 81). In response, Defendants filed a notice in which they stated there was no video or camera footage or witness statements relevant to Holloway's claims. (ECF No. 83).

[14] In several pleadings, Holloway appears to reference documents that may have been produced during discovery. (ECF Nos. 75, 82, 91). However, the referenced documents were not attached to the pleadings and do not appear in the Court's record. Moreover, based on Holloway's statement regarding the content of these documents, they would not affect this Court's ultimate decision.

Moreover, the Fifth Circuit has held that providing an inmate with the wrong medication, even if proven, involves nothing more than negligence and does not constitute deliberate indifference to the inmate's serious medical needs. *Daniels v. Beasley*, 241 F. App'x 219, 220 (5th Cir. 2007) (per curiam); *see Sulak v. Schafer*, No. 6:18CV65, 2019 WL 5076411, at *8 (E.D. Tex. Sept. 19, 2019) (holding that inmate's claim that he was prescribed wrong medication failed to set forth a valid showing of deliberate indifference to serious medical needs where extensive medical record showed he was seen and treated repeatedly), *report and recommendation adopted*, No. 6:18-CV-65, 2019 WL 5068451 (E.D. Tex. Oct. 8, 2019). Similar to the plaintiff in *Sulak*, Holloway's claims of deliberate indifference to his serious medical needs are belied by the medical records showing he was repeatedly seen by medical personnel and provided continual testing and treatment for his HIV. (ECF No. 86 [Exhs. A2, A4, A6–A10, A12–A15, A17, A19–A25, A27, A29–A33, A35–A36]). This treatment was provided despite Holloway's numerous refusals of treatment throughout his confinement in the Connally Unit and continuing upon his transfer to the Telford Unit. (ECF No. 86 [Exhs. A16–A21, A24–A25, A27, A30–A33, A35]).

It is amply clear that the UTMB Defendants (and other providers) were neither reckless nor deliberately indifferent to Holloway's admittedly serious medical needs. In fact, the record demonstrates that quite the opposite is true. The medical records produced by Defendants and referenced above establish as a matter of law that the UTMB Medical Defendants afforded Holloway considerable care and attention and at all times provided him with his prescribed medications. The records also establish Holloway's medical condition improved during his confinement in the Connally Unit. Thus, the Court finds that as matter of law that the UTMB

Medical Defendants were not deliberately indifferent to Holloway's serious medical needs, did not violate Holloway's Eighth Amendment rights, and are entitled to summary judgment.

***Mishandling of Grievances — TDCJ Defendants***

In his Amended Complaint and various other filings, Holloway contends the TDCJ Defendants failed to conduct adequate investigations into his grievances and failed to address his medication concerns stated in those grievances with the UTMB Medical Defendants, resulting in significant harm. (ECF Nos. 17, 82, 91). He seems to suggest the actions of the TDCJ Defendants with regard to his grievances constituted concerted action with the UTMB Medical Defendants' so as to violate his rights under the Eighth Amendment. (ECF Nos. 17, 82, 91). However, the Court finds Holloway's grievance allegations do not give rise to an Eighth Amendment or other constitutional claim. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Giddings v. Valdez*, No. 06-CV-2384-G, 2007 WL 1201577, at *3 (N.D. Tex. Apr. 24, 2007).

Prisoners have liberty interests only in "freedom[s] from restraint ... impos[ing] *atypical* and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger*, 404 F.3d at 373–74 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Prisoners do not have a federally protected liberty interest in having grievances addressed and resolved to their satisfaction. *E.g., Geiger*, 404 F.3d at 74. Moreover, although an adequate grievance procedure is a condition precedent to filing a suit arising under § 1983, *see* 42 U.S.C.1997e(a), its ineffectiveness or altogether absence does not give rise to a constitutional claim. *Giddings*, 2007 WL 1201577, at *3. Thus, the Court finds Holloway's claims about the actions and responses to his grievances — even if true — do not amount to constitutional violations. Holloway has, therefore, failed to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2),

1915A (when plaintiff seeks redress from officer or employee of governmental entity or is proceeding IFP, Court may *sua sponte* dismiss § 1983 complaint — or any portion thereof — if Court finds it frivolous or malicious, or if it fails to state claim upon which relief may be granted).

Additionally, to state a viable § 1983 claim, a plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that officials are not vicariously liable for conduct of those under their supervision; accountable only for their own acts or implementing unconstitutional policies resulting in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"). Thus, to sustain a § 1983 claim that the TDCJ Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights, Holloway would have to allege they were personally involved in his medical care or responsible for a policy or custom that gave rise to his alleged constitutional violation. *See Alderson*, 848 F.3d at 420.

Holloway has not alleged the TDCJ Defendants were personally involved in his medical care or that they were responsible for a policy or custom that gave rise to his alleged Eighth Amendment deprivation. (ECF Nos. 17, 82). Rather, Holloway merely contends the TDCJ Defendants (1) failed to adequately investigate his grievances wherein he alleged he was intentionally given the incorrect medications, and (2) failed to respond to them appropriately by addressing the issue with the UTMB Medical Defendants. (ECF Nos. 17, 82). In the absence of

allegations that the TDCJ Defendants were personally involved in providing him with incorrect medications, Holloway has failed to state a claim upon which relief may be granted. *See Alderson*, 848 F.3d at 420; 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Holloway cannot undermine the law regarding grievances and the requirement of personal involvement by conclusorily claiming Defendants acted in "concert" with each other. (ECF Nos. 17, 82). Other than Holloway's conclusory and unsubstantiated contention that the TDCJ Defendants failed to adequately investigate or address the allegations in his grievances with the UTMB Medical Defendants, there is no evidence Defendants acted in "concert" to violate Holloway's Eighth Amendment rights. (ECF Nos. 17, 82).

Finally, as the Court discussed above, Defendants established as a matter of law that the UTMB Medical Defendants were not deliberately indifferent to Holloway's serious medical needs. *See, supra*. The TDCJ Defendants contend this entitles them to qualified immunity. (ECF No. 86).

The Court finds that even if Holloway's contention regarding the handling of his grievances could be construed as an allegation that the TDCJ Defendants violated his Eighth Amendment rights, the TDCJ Defendants could not have been deliberately indifferent to Holloway's serious medical needs by failing to address the medication issues with the UTMB Medical Defendants because there was no issue to address. In other words, there was no constitutional violation. The absence of a constitutional violation entitles the TDCJ Defendants to qualified immunity because Holloway failed to "make out a violation of a constitutional right." *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 69 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). Accordingly, the Court finds the TDCJ Defendants are also entitled to summary judgment.

## CONCLUSION

Based on the foregoing analysis, the Court finds Defendants are entitled to summary judgment with regard to Holloway's § 1983 claims.

**IT THEREFORE ORDERED** that Defendants' motion for summary judgment (ECF No. 86) is **GRANTED** and Holloway's claims against Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that Holloway shall take nothing in this cause against Defendants.

**IT IS FURTHER ORDERED** that Holloway's motion for summary judgment (ECF No. 82) is **DENIED**.

It is so **ORDERED**.

SIGNED this 21st day of July, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE